UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

CHARLES WEBB,

                     Plaintiff,                  Case No. 1:25-cv-26

v.                                     Honorable Maarten Vermaat

WELLPATH HEALTHCARE
CORPORATION et al.,

                     Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). The Court will grant Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Applying these standards, the Court will partially dismiss Plaintiff's complaint for failure to state a claim as detailed below. Additionally, the Court will grant Plaintiff's motion to amend (ECF No. 5) and will direct the Clerk to file the proposed amended complaint (ECF No. 5-1) as an amendment to the complaint.

## Discussion

### I.    Motion to Amend

When Plaintiff initiated this action, he indicated that he was filing his suit pursuant to the ADA and the RA against Defendants in their official capacities. (Compl., ECF No. 1, PageID.1.) Subsequently, Plaintiff filed a motion to amend (ECF No. 5), and he attached a proposed amended complaint (ECF No. 5-1) to the motion.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

In the motion and proposed amended complaint, Plaintiff indicates that in addition to bringing claims pursuant to the ADA and the RA, he wishes to amend his complaint to add claims pursuant to 42 U.S.C. § 1983. (*See* ECF No. 5, PageID.33 (stating that in the original complaint, Plaintiff "failed to cite the federal statute 42 U.S.C. § 1983, where Plaintiff allege[s] he was denied access to medical equipment (CPAP machine) . . ."); *see also* ECF No. 5-1.)[2] However, Plaintiff's intentions regarding the proposed amended complaint are not entirely clear because although Plaintiff styled the document as a "proposed amended complaint," meaning it would supersede the original complaint, he does not include any of the factual allegations that are set forth in the original complaint. (*See generally* Compl., ECF No. 1.) Instead, in the proposed amended complaint, Plaintiff only includes a cursory summary of his claims. (*See* ECF No. 5-1.) And, unlike Plaintiff's original complaint, Plaintiff's proposed amended complaint does not indicate in which capacities he is suing Defendants. Under these circumstances, and in deference to Plaintiff's *pro se* status, the Court will consider the proposed amended complaint to be an amendment to the original complaint, rather than a superseding amended complaint.

Accordingly, the Court will grant Plaintiff's motion to amend (ECF No. 5) and will direct the Clerk to file the proposed amended complaint (ECF No. 5-1) as an amendment to the complaint. Liberally construing Plaintiff's complaint and amendment, as the Court is required to do at this stage of the proceedings, the Court assumes, without deciding, that Plaintiff is proceeding against Defendants in their official and individual capacities pursuant to 42 U.S.C. § 1983, the ADA, and the RA.

---

[2] In this opinion, the Court corrects the capitalization, punctuation, and spelling in quotations from Plaintiff's filings.

## II.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Richard A. Handlon Correctional Facility (MTU) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan, the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan, the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan, and the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues Wellpath Healthcare Corporation (Wellpath), the Duane L. Waters Hospital Respiratory Division (Duane L. Waters Hospital), and ECF Transportation Officers Unknown Janis and Unknown Bulerski.

In Plaintiff's complaint, he alleges that on November 15, 2022, he went to the ECF control center so he could be transferred to LMF, where he would be housed so he could attend federal court proceedings for a previously filed civil rights action in this Court. (Compl., ECF No. 1, PageID.3.) When Plaintiff went to the control center, he had his CPAP machine with him. (*Id.*) Before being "shackled up by transportation officer [Defendant] Janis, Plaintiff informed Janis that he needed to keep his CPAP machine on his person because in the past when transportation officer[s] took his CPAP machine, he didn't receive it until days later along with his property." (*Id.*) Plaintiff explained: "I don't sleep without my machine because I stop breathing in my sleep, and I can die from not breathing." (*Id.*) In response, Defendant Janis told Plaintiff that Plaintiff could not "keep [his] CPAP on [him]." (*Id.*) Plaintiff then stated: "According to MDOC policy and procedure, prisoners with medically necessary devices, such as CPAP machines, shall have these

items in their immediate possession during transfers."[3] (*Id.*) Defendant Janis told Plaintiff that Plaintiff had "just made that up; there's no policy or procedure that says that." (*Id.*) Plaintiff then asked: "You haven't transported a prisoner carrying his CPAP machine?" (*Id.*) Thereafter, Defendant Janis said: "I'm giving you a direct order to give me the machine, so I can give it to my partner [and] then finish chaining you guys up so we can leave." (*Id.*) Plaintiff asked Defendant Janis for Janis's supervisor's name, and Janis told Plaintiff: "my name is Janis; write a grievance; it won't go anywhere." (*Id.*) "Plaintiff gave [Defendant] Janis his CPAP machine." (*Id.*)

Approximately five minutes later, Defendant Bulerski "returned to the area where the prisoners were to be chained," and Plaintiff asked Bulerski, "where did y'all put the CPAP machine." (*Id.*, PageID.3–4.) In response Defendant Bulerski said: "It's with your other personal property." (*Id.*, PageID.4.) Plaintiff told Defendant Bulerski that Defendant Janis had said "there is no policy or procedure that allows prisoners to have their medical device in their immediate possession." (*Id.*) Defendant Bulerski stated: "If there is a policy, we would know about it. We have been working for the MDOC for a very, very long time." (*Id.*) Plaintiff explained that he has "transferred before and didn't get [the] CPAP machine in a timely manner." (*Id.*) In response, Defendant Bulerski said: "My job is to transfer you; not make sure you get your CPAP machine." (*Id.*)

Plaintiff was then transferred to the SLF "transportation hub waiting to be transferred to [LMF]." (*Id.*) Subsequently, Plaintiff asked non-party Officer Campbell, "who was the transportation officer on the bus," if there was "a CPAP machine put on the bus or given to him." (*Id.*) Non-party Officer Campbell told Plaintiff that Campbell was not "given a CPAP machine nor

---

[3] The Court notes that Plaintiff does not identify the specific MDOC policy that he was referring to. (*See generally* Compl., ECF No. 1; Amendment, ECF No. 5-1.)

is there a CPAP machine on this bus." (*Id.*) Plaintiff was then transported from SLF to URF. (*Id.*) Plaintiff was at URF from 6:00 p.m. on November 15, 2022, to 6:00 a.m. on November 16, 2022, and during that time, Plaintiff "didn't go to sleep because he didn't have his CPAP machine." (*Id.*) Plaintiff claims that on November 16, 2022, his "head was hurting," and he was "fatigued and feeling dizzy as he was being transported from [URF] to [LMF]." (*Id.*)

Upon arrival at LMF, Plaintiff was seen by non-party Nurse Smith, and Plaintiff explained "that he had a headache, [and] was feeling very dizzy and fatigued." (*Id.*, PageID.5.) Plaintiff stated that "he had not been to sleep because he had been without his CPAP machine for 1 ½ days." (*Id.*) "Plaintiff asked [non-party] Nurse Smith did health service have a CPAP machine he could use while he was at LMF." (*Id.*) In response, non-party Nuse Smith stated: "Unfortunately, we don't have any loaner CPAPs here. CPAPs come from the respiratory division at Duane L. Waters Hospital in Jackson." (*Id.*) Non-party Nurse Smith also said that "CPAPs are a necessary medical device," and asked "why don't you have it with you?" (*Id.*) Plaintiff told non-party Nurse Smith that the "[ECF] transportation officers took it from [him] when [he] was being transferred." (*Id.*) Plaintiff asked non-party Nurse Smith if Smith "could contact Duane L. Waters and request a CPAP machine for him." (*Id.*) "Nurse Smith replied: "I will not; it's not policy or custom to contact Duane L. Waters for a loaner CPAP machine; wait until your CPAP machine arrives here." (*Id.*)

On November 17, 2022, "Plaintiff went to his civil trial [in this Court] and requested an adjournment due to not having his property (legal material) and sleep deprivation." (*Id.*) "Plaintiff's request was denied." (*Id.*)

Plaintiff claims that "as a result of him not getting any sleep due to not receiving his CPAP machine, he became mentally and physically weak, to the point where he was unable to participate in his daily routine exercise (jogging) during recreation periods." (*Id.*, PageID.5–6.)

On November 21, 2022, Plaintiff was transferred back to ECF via the same route from LMF to URF to SLF and finally to ECF. (*See id.*, PageID.6.) On November 22, 2022, Defendants Janis and Bulerski were the officers that drove Plaintiff from SLF to ECF. (*Id.*) Plaintiff told Defendants Janis and Bulerski that Plaintiff had "never received his property or CPAP machine," and Defendant Bulerski stated: "Your property and CPAP machine are in the property room." (*Id.*)

Plaintiff claims that Defendant Duane L. Waters Hospital "rendered medical deprivation by not supplying a CPAP machine or a loaner CPAP machine." (*Id.*) Additionally, Plaintiff claims that Defendant Wellpath denied him "medical equipment pursuant to a policy or custom," and that Defendants Janis and Bulerski "refused to accommodate Plaintiff's disability [and] deprived Plaintiff from accessing sleep on the same basis as nondisabled prisoners." (*Id.*, PageID.7.) Based on the foregoing allegations, the Court construes Plaintiff's complaint, which consists of Plaintiff's original complaint and the amendment to the complaint, to raise the following claims under 42 U.S.C. § 1983: Eighth Amendment deliberate indifference claims against all Defendants and Fourteenth Amendment equal protection claims against Defendants Janis and Bulerski. Additionally, the Court construes Plaintiff's complaint to raise claims under the ADA and RA against all Defendants.[4] As relief, Plaintiff seeks monetary damages. (*Id.*)

## III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

---

[4] Based on Plaintiff's "claim[s] for relief," which are set forth in the complaint (*see* ECF No. 1, PageID.6–7) and summarized above, the Court does not construe Plaintiff's complaint and amendment to raise any additional claims.

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

## A.     Section 1983 Claims

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### 1.     Defendant Duane L. Waters Hospital

In this action, Plaintiff names the Duane L. Waters Hospital as a Defendant. (*See, e.g.*, Compl., ECF No. 1, PageID.1.) However, the Duane L. Waters Hospital is not an entity capable

of being sued under § 1983 because it is a building owned by the MDOC. *Cf. Ryan v. Corizon Health Care*, No. 1:13-cv-525, 2013 WL 5786934 (W.D. Mich. Oct. 28, 2013) (discussing that "individual prisons named as Defendants . . . are buildings used by the MDOC to house prisoners," and "[t]hey are not the proper public entity for suit"); *Poole v. Michigan Reformatory*, No. 09-CV-13093, 2009 WL 2960412, at \*1 (E.D. Mich. Sept. 11. 2009). And, the Duane Waters Hospital and the State of Michigan (acting through the MDOC) are not "persons" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citation omitted); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006).

Accordingly, Plaintiff's § 1983 claims against the Duane L. Waters Hospital will be dismissed for failure to state a claim.

### 2.    Official Capacity Claims Against Defendants Janis and Bulerski

The Court construes Plaintiff's complaint to raise § 1983 claims against Defendants Janis and Bulerski in their official and individual capacities.

A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, as discussed above, the State of

Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides*, 535 U.S. at 617 (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks monetary damages only. (Compl., ECF No. 1, PageID.7.) However, the MDOC is not a "person" who may be sued under § 1983 for money damages. Therefore, Plaintiff may not seek monetary damages against Defendants Janis and Bulerski in their official capacities. Accordingly, Plaintiff's § 1983 claims against Defendants Janis and Bulerski in their official capacities will be dismissed for failure to state a claim.

### 3.    Eighth Amendment Claims Against Defendants Wellpath, Janis, and Bulerski

The Court construes Plaintiff's complaint to raise Eighth Amendment deliberate indifference claims against Defendants Wellpath, Janis, and Bulerski, alleging that Defendants Janis and Bulerski failed to transport Plaintiff's CPAP machine when Plaintiff was transferred, resulting in Plaintiff being without his CPAP machine from November 15, 2022, to November 22, 2022. (*See generally* Compl., ECF No. 1; Amendment, ECF No. 5-1.)

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Additionally, the Eighth Amendment protects against the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). However, the Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).

11

### a.    Defendant Wellpath

Plaintiff names Wellpath, a private entity that contracts with the state to provide healthcare to inmates, as a Defendant. (*See* Compl., ECF No. 1, PageID.1.)

A private entity, such as Wellpath, that contracts with the state to perform a traditional state function like providing healthcare to inmates can "be sued under § 1983 as one acting 'under color of state law.'" *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quoting *West*, 487 U.S. at 54). The requirements for a valid § 1983 claim against a municipality apply equally to private corporations that are deemed state actors for purposes of § 1983. *See Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) (recognizing that the holding in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), has been extended to private corporations); *Street*, 102 F.3d at 817–18 (same); *Rojas v. Alexander's Dep't Store, Inc.*, 924 F.2d 406, 409 (2d Cir. 1990) (same); *Cox v. Jackson*, 579 F. Supp. 2d 831, 851–52 (E.D. Mich. 2008) (same).

"Under 42 U.S.C. § 1983, while a municipality can be held liable for a constitutional violation, there is no vicarious liability based on the acts of its employees alone." *Lipman v. Budish*, 974 F.3d 726, 747 (6th Cir. 2020) (citing *Monell*, 436 U.S. 690–91). Instead, a municipality "can be sued under § 1983 only when a policy or custom of that government caused the injury in question." *Id.* (citations omitted). "[T]he finding of a policy or custom is the initial determination to be made in any municipal liability claim." *Doe v. Claiborne Cnty.*, 103 F.3d 495, 509 (6th Cir. 1996). Further, the policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity, and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005) (citing *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003)); *Claiborne Cnty.*, 103 F.3d at 508–09.

A policy includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff's department. *See Monell*, 436 U.S. at 690. Moreover, the United States Court of Appeals for the Sixth Circuit has explained that a custom "for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law." *Claiborne Cnty.*, 103 F.3d at 507. "In short, a 'custom' is a 'legal institution' not memorialized by written law." *Id.*

Here, Plaintiff claims that Defendant Wellpath denied him "medical equipment pursuant to a policy or custom." (Compl., ECF No. 1, PageID.7.) The only facts that Plaintiff alleges in support of this conclusory assertion are that when Plaintiff asked non-party Nurse Smith at LMF if Smith "could contact Duane L. Waters and request a CPAP machine for him," "Nurse Smith replied: "I will not; it's not policy or custom to contact Duane L. Waters for a loaner CPAP machine; wait until your CPAP machine arrives here." (*Id.*, PageID.5.)

Although Plaintiff claims that non-party Nurse Smith used the phrase "policy or custom" when explaining why Smith was not going to contact the Duane L. Waters Hospital, Plaintiff fails to allege any facts to suggest that this alleged "policy or custom" was Wellpath's. (*Id.*) Indeed, Plaintiff alleges no facts about whose "policy or custom" this was—was it Wellpath's, the MDOC's, or non-party Nurse Smith's? Instead, Plaintiff's allegations regarding a "policy or custom" are wholly conclusory. *Cf. Bilder v. City of Akron*, No. 92-4310, 1993 WL 394595, at *2 (6th Cir. Oct. 6, 1993) (affirming dismissal of § 1983 action when plaintiff allegation of policy or custom was conclusory, and plaintiff failed to allege facts tending to support the allegation). Under these circumstances, Plaintiff fails to allege the existence of a custom or policy *of Wellpath*, let alone that Wellpath's policy or custom was the moving force behind his alleged constitutional injury.

Accordingly, Plaintiff's § 1983 claims against Wellpath will be dismissed for failure to state a claim.

### b.     Defendants Janis and Bulerski

As to Defendants Janis and Bulerski, Plaintiff alleges that on November 15, 2022, they were the officers involved in transporting Plaintiff from ECF, where he was incarcerated at the time, to SLF, which Plaintiff describes as the MDOC's "transportation hub." (Compl., ECF No. 1, PageID.3–4.) Plaintiff claims that before leaving ECF, he explained to Defendants Janis and Bulerski why he needed to be transported with his CPAP machine. (*See id.*) In response, Plaintiff alleges that Defendants Janis and Bulerski told Plaintiff that he could not retain physical possession of the CPAP machine while being transported. (*See id.*) The Court notes that preventing Plaintiff from retaining physical possession of the CPAP machine while being transported does not itself violate the Eighth Amendment. However, Plaintiff's later allegations in the complaint suggest that rather than ensuring that the CPAP machine was transported with Plaintiff on November 15, 2022, the CPAP machine was brought to ECF's property room, resulting in Plaintiff being without his CPAP machine from November 15, 2022, until his return to ECF on November 22, 2022. (*See id.*, PageID.6 (alleging that on November 22, 2022, Defendant Bulerski stated: "Your property and CPAP machine are in the property room").)

At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Although Plaintiff has by no means proven his Eighth Amendment deliberate indifference claims against Defendants Janis and Bulerski, the Court will not dismiss these claims on initial review.

14

**4.    Fourteenth Amendment Equal Protection Claims Against Defendants Janis and Bulerski**

Plaintiff claims that Defendants Janis and Bulerski "deprived Plaintiff from accessing sleep on the same basis as nondisabled prisoners." (Compl., ECF No. 1, PageID.7.) The Court construes this allegation to raise a Fourteenth Amendment equal protection claim against Defendants Janis and Bulerski.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976). Disabled persons are not members of a protected class simply by virtue of their disability. *See City of Cleburne*, 473 U.S. at 445–46. Additionally, "prisoners are not considered a suspect class for purposes of equal protection litigation." *Jackson v. Jamrog,* 411 F.3d 615, 619 (6th Cir. 2005); *see also Wilson v. Yaklich,* 148 F.3d 596, 604 (6th Cir. 1998).

To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

15

Here, Plaintiff alleges in a conclusory manner that Defendants Janis and Bulerski treated him differently than others; however, Plaintiff fails to show that the others were similarly situated. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Furthermore, even viewing Plaintiff's equal protection claim as a class-of-one claim, the Court reaches the same conclusion because Plaintiff's equal protection claims are wholly conclusory, and he has alleged no *facts* that plausibly suggest that his equal protection rights were violated.

Accordingly, any intended Fourteenth Amendment equal protection claims will be dismissed for failure to state a claim.

### B.    ADA and RA Claims

Plaintiff claims that Defendants Duane L. Waters Hospital, Wellpath, Janis, and Bulerski violated his rights under the ADA and RA. (*See generally* Compl., ECF No. 1.)

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." *Id.* § 12102(2). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates, *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210–12 (1998), and the RA has also been found to apply to state prisons and inmates. *See, e.g.*, *Wright v. N.Y. Dep't of Corr.*, 831 F.3d 64, 72 (2d Cir. 2016) (discussing that "[b]oth the ADA and the RA undoubtedly apply to state prisons and their prisoners" (citation omitted). The proper defendant for Title II ADA claims and RA claims is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002); *see, e.g.*, *Tanney v. Boles*, 400 F. Supp. 2d 1027, 1044 (E.D. Mich. 2005) (citations omitted). Plaintiff sues Defendants in their official and individual capacities. Because Plaintiff may not pursue ADA and RA claims against Defendants in their individual capacities, any intended ADA and RA claims against Defendants in their individual capacities will be dismissed.

As to Plaintiff's official capacity ADA and RA claims, the State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA or the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1044–47. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Likewise, the Court assumes, without deciding, that Defendants are not immune from liability in their official capacities under the RA. *See, e.g.*, *Tanney*, 400 F. Supp. 2d at 1047 (citing cases).

Turning to the merits of Plaintiff's ADA and RA claims, although Plaintiff alleges in a conclusory manner that he was "excluded from services or activities" due to his disability, Plaintiff

fails to allege any facts to support this conclusory assertion. As the United States Court of Appeals for the Second Circuit has explained, "[w]here the handicapping condition is related to the condition(s) to be treated, it will rarely, if ever, be possible to say . . . that a particular decision was 'discriminatory.'" *United States v. Univ. Hosp.* 729 F.2d 144, 157 (2d Cir. 1984). Indeed, that distinction explains why the ADA and the RA are not appropriate federal causes of action to challenge the sufficiency of medical care because "[t]he ADA is not violated by 'a prison's simply failing to attend to the medical needs of its disabled prisoners.'" *Nottingham v. Richardson*, 499 F. App'x 368, 377 (5th Cir. 2012); *see, e.g.*, *Baldridge-El v. Gundy*, No. 99-2387, 2000 WL 1721014, at *2 (6th Cir. Nov. 8, 2000) ("[N]either the RA nor the ADA provide a cause of action for medical malpractice."); *Centaurs v. Haslam*, No. 14-5348, 2014 WL 12972238, at *1 (6th Cir. Oct. 2, 2014) ("Although [Plaintiff] may have a viable civil rights claim under 42 U.S.C. § 1983 for inadequate medical care, he has failed to state a prima facie case under the parameters of the ADA."); *Powell v. Columbus Medical Enterprises, LLC*, No. 21-3351, 2021 WL 8053886, at *2 (6th Cir. Dec. 13, 2021) ("This dissatisfaction necessarily sounds in medical malpractice, which, 'by itself, does not state a claim under the ADA.'").[2]

Here, Plaintiff alleges that the failure to provide him with a CPAP machine from November 15, 2022, to November 22, 2022, violated the ADA and the RA. Specifically, Plaintiff claims that

---

[2] S*ee also Iseley v. Beard*, 200 F. App'x 137, 142 (3d Cir. 2006) ("Iseley . . . claims that he was denied medical treatment for his disabilities, which is not encompassed by the ADA's prohibitions."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) ("[A] lawsuit under the Rehab Act or the Americans with Disabilities Act (ADA) cannot be based on medical treatment decisions."); *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[I]t is well settled that the ADA [and the RA do] not provide a private right of action for substandard medical treatment." (internal quotation marks omitted)); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1294 (11th Cir. 2005) ("The Rehabilitation Act, like the ADA, was never intended to apply to decisions involving . . . medical treatment.").

18

the denial of the CPAP machine "excluded [him] from" unspecified "services or activities" and that Defendants Janis and Bulerski "refused to accommodate [his] disability." (Compl., ECF No. 1, PageID.6–7.) However, Plaintiff fails to explain, and the Court fails to discern, how the denial of his CPAP machine resulted in Plaintiff's exclusion from unspecified "services or activities." And, although Plaintiff references a failure to "accommodate [his] disability," as discussed above, the failure to address a prisoner-plaintiff's medical needs may be the proper subject of a § 1983 suit, but it is not the proper subject for claims under the ADA and the RA. *See, e.g.*, *Baldridge-El*, 2000 WL 1721014, at *2; *Centaurs*, 2014 WL 12972238, at *1.

Accordingly, for these reasons, Plaintiff fails to state any claims against Defendants Duane L. Waters Hospital, Wellpath, Janis, and Bulerski under the ADA and the RA, and his ADA and RA claims against Defendants will be dismissed.

<u>Conclusion</u>

The Court will grant Plaintiff leave to proceed *in forma pauperis*. (ECF No. 2.) Additionally, the Court will grant Plaintiff's motion to amend (ECF No. 5) and will direct the Clerk to file the proposed amended complaint (ECF No. 5-1) as an amendment to the complaint.

Further, having conducted the review required by the PLRA, the Court determines that Defendants Duane L. Waters Hospital and Wellpath will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following § 1983 claims against Defendants Janis and Bulerski: official capacity claims and Fourteenth Amendment equal protection claims.

Additionally, the Court will dismiss, for failure to state a claim, Plaintiff's ADA and RA claims against Defendants Janis and Bulerski.

Plaintiff's Eighth Amendment deliberate indifference claims against Defendants Janis and Bulerski in their individual capacities remain in the case.

An order consistent with this opinion will be entered.


Dated:    July 11, 2025                          /s/ *Maarten Vermaat*
                                                 Maarten Vermaat
                                                 United States Magistrate Judge